**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Beryl A'Dare Bratton, et al.,

Plaintiffs,

vs.

Schering-Plough Corporation, et al.,

Defendants.

No. CV 07-0653-PHX-JAT

**ORDER**

Pending before the Court is Defendants' Motion to Transfer Proceedings to the United States District Court for the District of New Jersey (Doc. #13). The Court now rules on the motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Schering-Plough Corporation and its subsidiary, Schering Corporation, are New Jersey corporations both with their principal place of business in Kenilworth, New Jersey. Motion to Transfer Proceedings ("Motion") at 4. Schering Sales Corporation is a Delaware Corporation with its principal place of business in Kenilworth, New Jersey. *Id*. The Schering Defendants ("Schering") engage in research, design, manufacture, marketing and sale of pharmaceuticals and other products. *Id.* Plaintiffs, the Brattons, reside in Douglas, Arizona, and Mr. Bratton was prescribed and received Schering drug Eulexin, to treat his prostate cancer from 1995 to 2005. Opposition to Motion to Transfer Proceedings ("Opposition") at 7.

**A. Schering's Criminal Investigation and Settlement**

In 1998, the United States Attorney's Office in Philadelphia, Pennsylvania began to investigate Schering for criminal and fraudulent activity and subsequently indicted Schering Corporation on criminal charges in 2004. Opposition at 5. Schering pled guilty to the charges and as part of its plea agreement, entered into a Corporate Integrity Agreement ("CIA") that gave the federal government monitoring rights over the corporation. *Id*. The United States Attorney's Office in Boston, Massachusetts instituted a second criminal investigation of Schering, and on August 29, 2006, the United States Attorney for the District of Massachusetts filed a criminal Information ("Information") that charged Schering with conspiracy to make false statements regarding off-label promotion of Schering drugs Intron A and Temodar. Motion at 4, Opposition at 5. As a result of the Boston investigation, Schering pled guilty to one charge of criminal conspiracy to defraud the federal government, and agreed to pay $435 million to settle criminal and civil charges ("Boston Settlement"). Motion at 4, Opposition at 5.

While the Boston Settlement was pending, three former Schering sales representatives filed a civil *qui tam* action in Massachusetts federal court that alleged a broader fraud scheme than claimed by the Information. Opposition at 5-6. The *qui tam* action alleged more pervasive illegal activity regarding an additional Defendant, AmerisourceBergen, and additional Schering drugs, including Eulexin. *Id.*

**B. Resulting Civil Actions**

As a result of the Boston Settlement, seven consumer fraud cases were filed. *Id.* at 6. On December 1, 2006, the International Brotherhood of Teamsters Local No. 331 Health and Welfare Trust Fund filed the first putative class action against Schering in the District of New Jersey, *Int'l Brotherhood of Teamsters Local No. 331 Health & Welfare Trust Fund v. Schering-Plough Corp.*, Civil Action No. 06-5774 (D.N.J.) (SRC) ("*Teamsters*"). Motion at 5. The *Teamsters* Complaint represents a proposed class of third-party payors ("TPP") who paid reimbursements or benefits for prescriptions of Schering drugs Temodar and Intron

A. *Id*. The Complaint alleges that Schering improperly marketed and sold Temodar and Intron A by promoting them for off-label use and offering physicians remuneration to prescribe the drugs, and that due to this fraudulent conduct, TPP paid inflated prices for Schering drugs. *Id.*

On January 2, 2007, the Heavy and General Laborer's Local Union 472/172 Welfare Fund filed a second putative class action in the District of New Jersey, *Heavy and General Laborer's Local Union 472/172 Welfare Fund v. Schering-Plough Corp.*, Civil Action No. 07-0003 (D.N.J.) (JLL) ("*General Laborer's*"). *Id*. The *General Laborer's* Complaint adopts the same class definition and allegations as *Teamsters*, and also addresses the sales of Temodar and the "Intron Franchise," which includes Intron A, and two other drugs, Rebetol and PEG-Intron. *Id*.

Due to these overlapping plaintiffs and claims, Schering petitioned the Chief Judge of the District of New Jersey to reassign *General Laborer's* to the Honorable Stanley R. Chesler, who presided over *Teamsters*. *Id.* at 6. On February 16, 2007, Chief Judge Brown granted Schering's request and reassigned *General Laborer's* to Judge Chesler. *Id.*

On February 21, 2007, Judge Chelser approved a Joint Stipulation between the plaintiffs in *Teamsters* and *General Laborer's* on one side, and Schering on the other, that consolidated the actions and appointed Lead Plaintiffs and Lead Plaintiffs' Counsel. *Id*. The Joint Stipulation, titled *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action* ("*In re Schering-Plough*"), established a procedure to consolidate before Judge Chesler newly-filed or transferred actions with common questions of law or fact to the consolidated action. *Id*.

On January 17, 2007, the plaintiff in *Montgomery v. Schering-Plough Corporation, et al*., Civ. A. No. 07-194 (E.D. Pa.) (MK) ("*Montgomery*"), filed a complaint in the Eastern District of Pennsylvania. The Complaint contained allegations that Schering participated in a scheme to market its drugs including Temodar, Intron A, Rebetol and PEG-Intron, through off-label uses and provided improper physician remuneration. *Montgomery* sought

compensation for TPP who provided reimbursements and prescriptions benefits for specified Schering drugs from January 1, 1998 through December 31, 2003. *Id.* at 7. On February 22, 2007, the court granted Schering's motion to transfer *Montgomery* to the District of New Jersey to consolidate the claim with *General Laborer's* and *Teamsters* under Judge Chesler. *Id*. The plaintiff in *Montgomery* attempted to avoid consolidating her claim, but Judge Chelser rejected her efforts and consolidated the claim pursuant to the Joint Stipulation. *Id*.

On February 9, 2007, BlueCross and BlueShield of Alabama filed a second putative class action against Schering in the Eastern District of Pennsylvania, *BlueCross and BlueShield of Alabama, et al.*, Civ. A. No. 07-568 (E.D. Pa.) (MK) ("*BCBS*"). The *BCBS* Complaint alleges that Schering promoted certain drugs, including Temodar, Intron A, Rebetol and PEG-Intron, for off-label uses and prescribed the drugs through improper physician remuneration. *Id.* at 8. On April 3, 2007, the court granted Schering's motion to transfer *BCBS* to New Jersey, where it was assigned to Judge Chesler and consolidated with the other New Jersey actions, as directed by the Joint Stipulation. *Id.*

On February 16, 2007, United American Insurance Company ("*UIA*") filed a third putative class action against Schering in the Eastern District of Pennsylvania. The Complaint alleged Schering's fraudulent scheme to market and sell certain drugs by promoting them for off-label uses and providing physicians with improper remuneration. *Id.* at 9. The *UAI* Complaint included the aforementioned Schering drugs and three additional drugs: Eulexin, Intregilin, and Fareston. *Id*.

On April 3, 2007, the court granted Schering's request to transfer *UAI* to the District of New Jersey, and consolidated the claim with *In re Schering-Plough* under Judge Chesler. *Id*.

**C. *Bratton* Complaint**

Mr. Bratton was prescribed and received Schering drug Eulexin from 1995 through 2005 ("relevant time period") to treat his prostate cancer. Opposition at 7. For part of the relevant time period, Mr. Bratton participated in Schering's "Commitment to Care" Program,

which was operated by Documedics, a wholly-owned subsidiary of Defendant Lash Group. *Id.* at 7-8. The Lash Group maintains an office in Phoenix, Arizona, but neither Documedics nor other additional Defendants are Arizona corporations, and none have their principal place of business in Arizona. *Id.* at 10-11, Opposition at 8. The Brattons' Complaint alleges a fraudulent scheme by Schering to market and sell certain drugs by promoting them for off-label uses and providing physicians with improper remuneration. Motion at 9-10.[1]

On April 3, 2007, the Brattons filed a Motion to Transfer and Consolidate for Pre-Trial Proceedings Before the Panel on Multi-District Litigation. Opposition at 9. The motion seeks to consolidate the five New Jersey actions and the *qui tam* action filed in the District of Massachusetts, and to transfer all claims to the District of Arizona, or alternatively to the District of Massachusetts, for pre-trial purposes, pursuant to 28 U.S.C. § 1407. *Id.* at 9.

**II. LEGAL STANDARD AND ANALYSIS**

The Court has the power to transfer venue under 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is not disputed that this case could have been brought in the District of Arizona. The relevant inquiry is regarding which forum best serves "the convenience of the parties, the convenience of the witnesses, and the interests of justice." *Advanced Semiconductor Materials v. Applied Materials, Inc.*, 30 USPQ2d 1553, 1554 (D.Ariz. 1993). The Court may consider several factors in determining whether to transfer venue, including: (1) the

[1]Schering discusses the connection between the Brattons' attorney, Larry J. Crown, and Donald E. Haviland, Jr., the attorney who filed four previous actions related to *In re Schering-Plough*. Crown and Haviland served as co-counsel in a different pharmaceutical sales and marketing case in the District of Arizona. While the attorneys' connection is noted, the Court does not draw conclusions or make an inference that counsel for the plaintiff in *Montgomery* and the Brattons' counsel have coordinated their actions in a deliberate scheme, as Schering alleges.

plaintiff's choice of forum, (2) the extent of the parties' contacts with the forum, (3) the contacts in the forum relating to the plaintiff's cause of action, (4) the availability of non-party witnesses, (5) the accessibility of evidence, and (6) the relative court congestion and time of trial in each forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Congress enacted § 1404(a) to prevent wasteful expenditure of judicial time, energy and money, and to protect the parties, witnesses and the public from unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The moving party bears the burden of showing that the inconvenience of litigating in the forum favors transfer. *See Commodity Futures Trading Comm'n. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**A. Plaintiffs' Choice of Forum**

Plaintiff's choice of forum is to be given "substantial deference" where the plaintiff has chosen his home forum. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d. 48, 52 (D.D.C. 2000). Although the Brattons have chosen their home forum, this is only one factor to be considered and is not dispositive. *Impra Inc. v. Quinton Instruments Co.*, 17 USPQ2d 1890, 1891 (D.Ariz. 1990). A plaintiff's choice of forum is entitled to less weight in evaluating venue transfer factors when the plaintiff represents a nationwide class, and the plaintiff's forum choice is not as great of a consideration when the operative facts have not occurred within the forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

The Brattons claim that a nationwide class of consumers, not only Arizona residents, have suffered financial harm due to Schering's fraudulent marketing scheme. Further, the illegal Schering conduct alleged in the claims occurred in New Jersey: The Brattons' Complaint, and those Complaints consolidated in the District of New Jersey, allege that the off-label marketing campaign and policy of providing improper physician remuneration was developed and implemented by the corporate headquarters in New Jersey. Because the allegedly fraudulent conduct occurred in New Jersey and the Brattons' choice of forum is entitled to less weight as a class action claim, the Court finds that the Brattons' choice of

their home forum does not weigh against transfer.

**B. Convenience of the Parties and Witnesses**

Factors relating to the convenience of the parties and witnesses are also relevant. Transfer of venue "is not appropriate...when the transfer merely shifts the inconvenience from one party to another." *Impra*, 17 USPQ2d at 1891. Here, there is no shifting of inconvenience from one party to the other. The convenience of the parties weighs in favor of transfer.

The Brattons argue that witnesses will be more inconvenienced if this case is transferred to the District of New Jersey while Schering asserts that the witnesses will be more inconvenienced if this case is adjudicated in the District of Arizona. The Brattons claim that New Jersey is not the most convenient forum for the parties or witnesses but fail to support this contention or rebut Schering's assertion that the majority of people involved are present in New Jersey and the relevant events occurred at Schering's corporate headquarters in New Jersey. Schering demonstrates that New Jersey is a more appropriate and convenient forum, because New Jersey is the center of the events, where Schering developed and implemented the alleged improper scheme to promote drugs for off-label uses and provide physicians with kick-backs for prescribing Schering drugs.

Schering argues that the Brattons do not make any factual allegations relating to Arizona besides the "Commitment to Care" Program and Mr. Bratton's Eulexin prescription that Schering provided at a reduced cost for a period of time. The core of the Brattons' claim relates to the New Jersey-based conspiracy to illegally market drugs in a manner developed at the corporate headquarters. The connection the Brattons cite to Arizona, through the "Commitment to Care" Program, is an application to "S-P Cares" Program with a post office box listed in Phoenix, Arizona. However, Schering contends that the "S-P Cares" is separate from "Commitment to Care" and does not involve any of the relevant Schering drugs in this claim. The application to the "Commitment to Care" Program, which involves cancer and hepatitis drugs addressed in this claim, lists post office boxes in Kansas and Kentucky, rather

than Arizona. Further, the Brattons do not offer support for their claim that Lash Group is based out of Arizona. Schering contends that Lash Group has several location, the most relevant of which is in California.

The Brattons also contend that because AmerisourceBergen, Documedics and Lash Group did not concede jurisdiction in New Jersey, Plaintiffs may not be able to bring this claim against all Defendants in the District of New Jersey. However, in response to Plaintiffs' argument, AmerisourceBergen filed a Reply in Support of Motion to Transfer that concedes jurisdiction in New Jersey for all of the Brattons' unique Defendants, including AmerisourceBergen, Documedics and Lash Group. In its reply, AmerisourceBergen further contends the Brattons added the unique Defendants to their complaint in an attempt to bolster the differences between the Brattons' claim and *In re Schering-Plough*. While the Brattons attempt to distinguish their claim, the Court notes that certain Defendants, including Documedics, have previously been named in the claims consolidated in New Jersey, but not formally charged as defendants. Because all Defendants have consented to jurisdiction in New Jersey, the jurisdictional issue that Plaintiffs raise does not weigh against transfer to the District of New Jersey. After considering the submissions of both parties, the Court finds that the inconvenience for each party's witnesses would be greater in Arizona. Also, New Jersey, where four consolidated claims are pending, will be the center of discovery, and therefore this factor weighs in favor of transfer.

**C. Interests of Justice**

In making the determination of the forum where the case can be most efficiently and economically litigated, a court may consider whether the parties are involved in a similar case in another district. *Advanced Semiconductor*, 30 USPQ2d at 1553; *Impra*, 17 USPQ2d at 1892. In general, "cases should be transferred to districts where related actions are pending." *Impra*, 17 USPQ2d at 1892.

Currently, four related actions are pending in the District of New Jersey. Plaintiffs argue that because there are two recently filed class actions pending in other jurisdictions,

the District of Florida ("*Hutson*") and the District of Massachusetts ("*Estelle*"), the case should not be transferred. However, *Hutson* and *Estelle* were not filed until after Schering filed its § 1404 Motion, and the plaintiffs in these cases have not yet served Schering with their Complaints. Defendants' Reply at 4. Schering intends to file § 1404(a) transfer motions regarding these pending claims at a later date. *Id*.

The Brattons attempt to distinguish their Complaint from *In re Schering-Plough* by including AmerisourceBergen Defendants, consisting of AmerisourceBergen Corporation, Amerisource Bergen Specialty Group, Lash Group and Documedics, Inc., and adding drugs Eulexin and what Plaintiffs refer to as four other unique drugs. The Brattons also distinguish their Complaint as representing a unique class of consumer plaintiffs, rather than TPP.

The Brattons argue that consolidating their claim with the claims pending in New Jersey would not be in the interest of justice, because they contend that their rights would be surrendered to appointed Lead Plaintiffs and Lead Counsel in the New Jersey action. The Brattons argue that their rights as representatives of the consumer class will not be protected or advanced by the appointed Lead Counsel, who serve their clients' allegedly conflicting interests.

However, Schering contends that because Judge Chesler has not ruled that the proceedings in the consolidated New Jersey claim will be limited to the specific allegations, causes of action or class definitions in the New Jersey Consolidated Amended Complaint, Plaintiffs do not have a basis for arguing that their rights will be surrendered upon consolidation. The parties in *In re Schering-Plough* entered into the Joint Stipulation when only two claims, *Teamsters* and *General Laborer's*, were pending, and therefore the scope of the consolidated claim, with the addition of *BCBS* and *UIA*, has not yet been determined.[2]

[2]On April 27, 2007, the plaintiff in *Montgomery* voluntarily dismissed her lawsuit after Judge Chesler consolidated the claim, and Plaintiff's attorney re-filed the suit in the District Court for the District of Massachusetts on May 11, 2007. Schering plans to again seek transfer of *Montgomery* to the District of New Jersey. Defendants' Reply at 4.

The Brattons claim that the consolidated action in New Jersey excludes consumers, unique drugs, including Mr. Bratton's prescribed drug, Eulexin, and unique Defendants Schering Corporation, Documedics, AmerisourceBergen and Lash Group. Also, the Brattons contend that the time period they allege, of a ten year conspiracy, is greater than the time alleged in the New Jersey action, and therefore, their claim is broader and longer in scope than *In re Schering-Plough*. The Brattons claim that newly released information unsealed after the *qui tam* action was filed further distinguishes their claim from the New Jersey action. However, several of the complaints that were consolidated with the initial New Jersey action were broader in scope than the Brattons allege. *UIA* contained allegations regarding the unique drugs the Brattons discuss and concerned the ten year time period alleged in the Brattons' Complaint, and thus included claims beyond the scope of *Teamsters* and *General Laborer's*, but was still consolidated because of its relation to *In re Schering-Plough*'s underlying claims. New information regarding the extent of Schering's conduct continues to become public. While the Brattons filed their Complaint in the wake of the unsealed *qui tam* action, the underlying claims are sufficiently related to weigh in favor of transfer.

When plaintiffs in both *Montgomery* and *BCBS* attempted to avoid consolidation of their cases, and argued that they would face prejudice and not have a full opportunity to adjudicate their claim if forced to consolidate, Judge Chesler stated that the leadership structure of the proceedings could be addressed and potentially altered through appropriate motions or discussions between the parties. Judge Chesler has not definitively established the leadership structure of the suit in the New Jersey action, and therefore Plaintiffs' argument that they would be forced to defer to the Lead Plaintiffs and Lead Counsel is premature and not supported by Judge Chesler's statements regarding the consolidated action. The Brattons' argument proved unpersuasive to Judge Chesler when employed by plaintiffs in *Montgomery* and *BCBS*, regarding suits with the same or similar factual allegations against Schering as the claim pending in New Jersey. Judge Chesler expressed

willingness to address the full extent of the claims against Schering in his courtroom, and has not yet made any decisions regarding how the case will proceed or any limitations on the plaintiffs' claims. As Schering contends, there is opportunity for the Brattons' counsel to assume the Lead Counsel role for a distinct class of consumers.

In other complex civil matters, Judge Chelser has allowed separate Lead Counsel for different classes of plaintiffs. *See* Defendants' Ex. 5-6. Here, Judge Chesler could potentially divide plaintiffs into distinct classes and designate separate counsel for TPP and consumers, respectively. Schering cites Judge Chesler's previous order in a consolidated action in which he allowed new Lead Plaintiffs and Lead Counsel within the same consolidated suit to represent a consumer class. This allowed the addition of claims beyond the scope of the original complaint. Rather than expend judicial resources by separating the claims, Judge Chelser consolidated the claims, but preserved all the plaintiffs' interests by naming new Lead Plaintiffs with their own Lead Counsel. Such a route is an option in this action due to the different classes of plaintiffs, both TPP and consumers, and therefore the Brattons' concern about the current leadership structure preventing them from full participation if their claim is consolidated does not weigh against transfer. Because of the time and expenditure necessary to conduct discovery into the extent of Schering's fraudulent activity, the similarity of the claims and the parties, and the possibility for the Brattons to represent a separate class of consumer plaintiffs, the Court finds it is not against the interest of justice to transfer this claim to New Jersey.

**D. Relative Congestion of the Courts**

Schering argues that in evaluating the Motion to Transfer, the Court should consider that the District of Arizona's docket is more congested than the District of New Jersey's docket. However, Schering's statistical evidence demonstrates that the disparity between the Districts is the difference between 11.2 months from filing to disposition of civil cases in Arizona, versus 8.4 months in New Jersey. Motion at 17. The overall difference in docket congestion between the Districts results in a three-month disparity that alone does not

warrant transfer. This factor is neutral in terms of affecting the balance for or against transfer.

**F. Balancing the Factors Affecting the Motion to Transfer**

Venue is proper in several jurisdictions, including both the District of Arizona and the District of New Jersey. The convenience of the parties weighs in favor of transferring the Brattons' Complaint to the District of New Jersey. The interests of justice also weighs in favor of transfer to the District of New Jersey because the consolidated action, which contains allegations directly related to the Brattons' underlying claim, is currently pending in that district. The relevant factors thus weigh in favor of granting Schering's motion to transfer venue to the District of New Jersey.[3]

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Transfer Proceedings to the United States District Court for the District of New Jersey (Doc. # 13) is GRANTED;

**IT IS FURTHER ORDERED** that the Clerk of Court shall transfer this case in its entirety to the United States District Court for the District of New Jersey.

DATED this 12th day of July, 2007.

James A. Teilborg
United States District Judge

[3] The Brattons request that the Court stay its decisions on Schering's motion pending the outcome of the Multi-District Litigation Panel's § 1407 hearing scheduled for July 26, 2007. Opposition at 9. However, because the Court grants Schering's motion and transfers the entire claim to the District of New Jersey under § 1404, the § 1407 motion, which would have provided a limited transfer for pre-trial purposes, is rendered moot.